Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Venture Resources
Consulting*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 21-31-ELG |
| | ) | (Chapter 11) |
| National Small Business Alliance, Inc. | ) | |
| | ) | |
| Debtor. | ) | |

**MOTION TO ENTER AN ON ORDER DIRECTING MITCHELL S. WAGNER TO SHOW CAUSE (i) WHY HE SHOULD NOT BE HELD IN CONTEMPT OF COURT; AND (ii) WHY HIS ADMISSION *PRO HAC VICE* SHOULD NOT BE REVOKED**

Comes now Venture Resources Consulting, LLC ("VRC"), by and through undersigned counsel, and moves this Honorable Court to enter an order to show cause why Mitchell S. Wagner ("Mr. Wagner"), counsel of record for The Motiva Group, Inc. ("TMGI") herein, should not (i) be held in contempt of court; and (ii) have his admission to practice *pro hac vice* revoked, and in support thereof states as follows:

### I.    Introduction

On the morning of June 24, 2021, undersigned counsel notified local counsel for TMGI of VRC's intent to file a motion relating to discrepancies between an e-mail exchange and a representation of that e-mail exchange docketed herein. Later the same day, TMGI's counsel filed a declaration (the "Explanatory Declaration," as found at DE #143) that (i) acknowledged the discrepancy; (ii) acknowledged when and how VRC brought it to the attention of TMGI's local

1

counsel; (iii) endeavored to explain the underpinning of the discrepancy; and (iv) set forth an apology to both this Honorable Court and counsel in this case.

Prior to the docketing of the Explanatory Declaration, it was VRC's intent to file herein a motion seeking an order directing Mitchell S. Wagner, Esq. ("Mr. Wagner") to show cause why he should not be held in contempt and why his admission *pro hac vice* should not be revoked. Upon review of the Explanatory Declaration, VRC elects to proceed with the bringing of such motion, because of material issues neither addressed in – nor mitigated through – the Explanatory Declaration, and because of certain underlying issues punctuated by this anomalous construct. But VRC also brings this motion with the sincere hope Mr. Wagner will be able to successfully show cause why no action should be taken.

This is, at irreducible minimum, an extremely unusual situation that arises on the heels of a notably unusual set of events. VRC does not feign to precisely understand what has happened, and believes a hearing on this matter would prove beneficial, but also hopes this motion will be received as an effort to obtain more information and not as an extension of the sort of adversarial rhetoric that has littered other filings herein.

**II.     Background**

During a hearing on two pending matters, on June 23, 2021, Mr. Wagner implored this Honorable Court to read his e-mail exchange with undersigned counsel, concerning TMGI's agreement to produce a corporate designee at the subject hearing. The e-mail exchange, as set forth in a signed declaration Mr. Wagner had previously made a part of the record herein (DE #136 at pp. 13-15), was not a "true and correct" copy of the e-mail exchange, as sworn by Mr. Wagner, but rather a copy that was materially different in a significant and important fashion.

2

Without delving into the substance of this case (which ought not be conflated with the issues discussed herein), a core issue at the June 23, 2021, hearing was TMGI's presentation of a corporate designee who, generally speaking, was not a topically knowledgeable individual. He answered myriad questions by indicating a lack of knowledge and generally demonstrated naivete as to various issues implicated by the matters being heard on that date.[1]

When the witness's lack of knowledge was raised as an issue, Mr. Wagner demurred that he had produced the person he promised to produce in an e-mail exchange with undersigned counsel and others. Reference was then made to the e-mail exchange, which Mr. Wagner had previously caused to be filed herein as part of the "Declaration of Mitchell S. Wagner" on pages 13-15 of docket entry #136 in this case (the "Wagner Declaration").

As is now manifest, the Wagner Declaration did not set forth a "true and correct" copy of the e-mail exchange. In the real e-mail exchange, Mr. Wagner asserts, *inter alia*:

> The request was not an invitation to dicker over professional courtesy. If you do not care to produce Rainaldi without a subpoena, I will have him subpoenaed and, if unsuccessful, I will explain the circumstances to the Court. Let me know by Monday if you change your mind so that, if not, I can arrange promptly to attempt to serve the subpoena.
>
> As to your PMK request: (i) Motiva's claims against Rainaldi and VRC are obviously based on evidence and attorney legal analysis derived in the litigation and beyond the ability of a lay PMK to address; (ii) similarly, Motiva's Proof of Claim is based on the Judgments attached to it to which I attested; and (iii)(a) the agreement with the Receiver is irrelevant since he is withdrawing his claim, and (b) I, not anyone at Motiva, enlisted the Receiver who served, not pursuant to agreement with Motiva (or me), but on the terms of the Order Appointing Receiver which, as a courtesy, I attach. **Nevertheless, if you would like a "PMK" from Motiva, I can have the CFO attend.** He speaks very limited English. As a consequence, you will need to arrange for a Spanish interpreter. Let me know.

E-mail Exchange, Exhibit A, at pp. 1-2 (emphasis added).

---

[1] A transcript of the hearing can be ordered if necessary. It is not reasonably believed these general characterizations as to what occurred are likely to be refuted or contested.

3

The e-mail exchange, as shared in the Wagner Declaration, is materially different in the manner in which Mr. Wagner offers to produce a corporate designee (or, more precisely, in the manner in which the qualifications, *vel non*, of that designee are set forth):

> The request was not an invitation to dicker over professional courtesy. If you do not care to produce Rainaldi without a subpoena, I will have him subpoenaed and, if unsuccessful, I will explain the circumstances to the Court. Let me know by Monday if you change your mind so that, if not, I can arrange promptly to attempt to serve the subpoena.
>
> As to your PMK request: (i) Motiva's claims against Rainaldi and VRC are obviously based on evidence and attorney legal analysis derived in the litigation and beyond the ability of a lay PMK to address; (ii) similarly, Motiva's Proof of Claim is based on the Judgments attached to it to which I attested; and (iii)(a) the agreement with the Receiver is irrelevant since he is withdrawing his claim, and (b) I, not anyone at Motiva, enlisted the Receiver who served, not pursuant to agreement with Motiva (or me), but on the terms of the Order Appointing Receiver which, as a courtesy, I attach. **Nevertheless, if you would like a PMK from Motiva (in actuality, under the circumstances, a PNK (person with no knowledge)), I can have the CFO attend.** He speaks very limited English. As a consequence, you will need to arrange for a Spanish interpreter. Let me know.

Wagner Declaration, DE #136, pp. 14-15 (emphasis added).

As is manifest, the real e-mail exchange promises a "PMK" – a niche litigation abbreviation for the "person most knowledgeable" (*Stonebreaker v. Guardian Life Ins. Co.*, 820 F. Supp. 2d 1096, 1098 (S.D. Cal. 2011)) – whereas the Wagner Declaration suggests TMGI indicated the witness would be a "PNK (person with no knowledge)." This turned out to be remarkably important, as the witness produced was someone generally without knowledge as to the matters upon which he was asked to testify.[2]

---

[2] But for how the hearing ultimately proceeded, undersigned counsel would not have noticed this issue. Only because of the emphasis placed on the e-mail, by Mr. Wagner, at the hearing, did a review ensue on the part of VRC. When the Wagner Declaration was originally filed, undersigned counsel saw the e-mail exchange, recognized the first few sentences, and mistakenly believed it to be a true and accurate copy of an exchange to which he was a party and with which he was already familiar. Knowledge of the issue was only first gleaned *after* the June 23, 2021 hearing.

In the Explanatory Declaration, Mr. Wagner observes the foregoing issues and explains – in some detail – that the discrepancy emanates from his practice of typing e-mails on Microsoft Word, pasting e-mails into an appropriate platform before sending them, making final edits in that platform, and keeping files in Microsoft Word. *See* Explanatory Declaration, DE #143-1, at ¶¶ 2-4.

### III.  Outstanding Issues

In light of the Explanatory Declaration, and upon reflection of the June 23, 2021 hearing, VRC believes certain issues to necessitate exploration:

First, the Wagner Declaration sets forth the at-issue e-mail exchange in a manner inclusive of so-called "header" information (indicia of who sent the e-mail, to whom the e-mail was addressed, on whom the e-mail was carbon copied, and the date/time at which the e-mail was sent). The header information is accurate in nature; the time stamps correlate precisely with the actual e-mail string attached hereto as Exhibit A. Yet this is not in the nature of body text information that would have been copied from a Microsoft Word document; this is text that would have been copied only from an e-mail platform. It is unclear how the header would have been accurately copied from an e-mail but the body text would have been copied not from the same e-mail but, rather, from a separate Microsoft Word document.

Second, the Wagner Declaration contains e-mails written by persons other than Mr. Wagner (i.e., counsel for the debtor herein and undersigned counsel). It is, similarly, unclear why these would have been copied from an e-mail platform but Mr. Wagner's missives would have been copied from a separate Microsoft Word document.

Third, at the June 23, 2021, hearing, Mr. Wagner repeatedly insisted he was only asked to present a witness knowledgeable about a pending objection to the claim of TMGI. A review of the

e-mail exchange makes clear Mr. Wagner was asked – and agreed – to produce a witness knowledgeable about "the claims asserted against Mr. Rainaldi, Venture Resources Consulting, LLC, and the Rainaldi Family Trust in the state court in San Diego…" E-mail Exchange, Exhibit A, at p. 2. It is unclear why this was represented to this Honorable Court in an objectively inaccurate fashion during the June 23, 2021, hearing.

Fourth, while the Explanatory Declaration discusses how two forms of an e-mail came to be, the same does not fully account for Mr. Wagner's decision, at the June 23, 2021, to repeatedly urge this Honorable Court to review the altered form of e-mail that was actually docketed, pointing to such as an explanation for a witness's naivete. It is unclear why, in repetitively urging review of the filed document, Mr. Wagner did not realize that document to be inconsistent with the genuine e-mail. It is concerning that he seemed to rely on the precise portion of the document that had been altered (albeit without ever expressly quoting those words).

Fifth, the witness produced by TMGI was, generally speaking, without knowledge as to TMGI's state court litigation against VRC and other parties, despite being designated as the "PMK" or "person most knowledgeable."[3] The witness did not appear to even know of VRC or its principal. Both the California Rules of Professional Conduct and the District of Columbia Rules of Professional Conduct require attorneys to keep clients informed as to a matter being handled by the attorney. *See, e.g.*, CA ST RPC Rule 1.4(a) ("A lawyer shall… keep the client reasonably informed about significant developments relating to the representation…"); DC R RPC Rule 1.4(a)

---

[3] Notwithstanding the suggestion made in paragraph 4 of the Explanatory Declaration, the actual e-mail created the impression a witness with factual knowledge would be produced, albeit a lay witness who could not expound upon various legal theories and who would not be familiar with all evidence gathered in litigation. The altered form of the e-mail is clearer that the witness will not have any knowledge whatsoever. There is a significant difference between these two positions; never did VRC anticipate a witness would not be able to identify VRC or its principal.

("A lawyer shall keep a client reasonably informed about the status of a matter"). In light of these ethical mandates, it would appear the witness produced by TMGI could not, in fact, have actually been the corporate designee most knowledgeable about "the claims asserted against Mr. Rainaldi, Venture Resources Consulting, LLC, and the Rainaldi Family Trust in the state court in San Diego…" It is unclear why the TMGI representative being kept apprised of litigation by Mr. Wagner (who, no doubt, has been made aware of the parties being sued, and why they are being sued, as part of being so apprised) was not the individual produced at the hearing by TMGI.

### IV.     Argument: Mr. Wagner Should be Directed to Show Cause

An e-mail was altered in a topically material fashion, and then repeatedly relied upon by Mr. Wagner in open court, with seeming emphasis on the altered portion of the e-mail (albeit without ever expressly quoting the words). The alteration was pursuant to a recordkeeping system, described in the Explanatory Declaration, that does not account for the presence of header information, that does not account for the inclusion of e-mails from other parties, and that appears to have certain intrinsic frailties inevitably inviting of a situation such as this. A misrepresentation was made – multiple times – as to the nature of a witness counsel agreed to produce. A generally unknowledgeable witness was produced at a hearing where an ensuing examination consumed the time and expense of multiple parties, as well as the time of this Honorable Court. And an Explanatory Declaration was then filed that, upon careful examination, appears to be a genuinely good faith effort at explaining a situation subsumed in tumult. So it is not entirely clear what – if anything – should ensue from these events, but it is clear that at least some inquiry is in order.

The Supreme Court of the United States has previously set forth the parameters governing the contempt powers of the federal courts of the United States:

> "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and

7

submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

*Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821); citing *Ex parte Robinson*, 19 Wall. 505 (1874); quoting *Link v. Wabash R. Co*., 370 U.S. 626, 630–631 (1962)).

The contempt powers of this Honorable Court are buttressed by the specific provisions of Title 11 of the United States Code (the "Bankruptcy Code"):

> In a nutshell: Section 105 aside, courts have inherent contempt powers in all proceedings, including bankruptcy, to "achieve the orderly and expeditious disposition of cases." Under § 105, Congress expressly grants court's independent statutory powers in bankruptcy proceedings to "carry out the provisions of" the Bankruptcy Code through "any order, process, or judgment that is necessary or appropriate."

*Jove Eng'g, Inc. v. I.R.S*., 92 F.3d 1539, 1553 (11th Cir. 1996) (quoting *Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991); 11 U.S.C. § 105(a)).

Whether or not the foregoing issues rise to the level of contempt is, at best, unclear as of present. The Explanatory Declaration is an admirable step on the part of Mr. Wagner and one that at least infers there may not be any contemptuous activity afoot. But the Explanatory Declaration leaves unanswered as many questions as it actually resolves, and comes only after the actions described *supra* found their crescendo at a hearing that was a frustrating endeavor for seemingly all involved (no doubt including the corporate designee of TMGI). So VRC brings this motion, petitioning for issuance of an order to show cause, in hopes the same will invite a fuller and more clear explanation of a series of otherwise-concerning events.

### V.     Conclusion

WHEREFORE, VRC respectfully prays this Honorable Court (i) direct Mr. Wagner to show cause why he should not be held in contempt and why his admission *pro hac vice* should not be revoked; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: June 25, 2021

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Venture Resources Consulting*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of June, 2021, a copy of the foregoing was served electronically upon filing via the ECF system, as well as via US Mail, postage prepaid, to:

Mitchell S. Wagner, Esq.
3771 Boone Court
San Diego, CA 92117

/s/ Maurice B. VerStandig
Maurice B. VerStandig