Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Venture Resources*
*Consulting*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 21-31-ELG |
| | ) | (Chapter 11) |
| National Small Business Alliance, Inc. | ) | |
| | ) | |
| Debtor. | ) | |

**REPLY TO OPPOSITION TO MOTION TO ENTER AN ON
ORDER DIRECTING MITCHELL S. WAGNER TO SHOW CAUSE
(i) WHY HE SHOULD NOT BE HELD IN CONTEMPT OF COURT;
AND (ii) WHY HIS ADMISSION *PRO HAC VICE* SHOULD NOT BE REVOKED**

Comes now Venture Resources Consulting, LLC ("VRC"), by and through undersigned counsel, in reply to the opposition (the "Opposition," as found at DE #149) of Mitchell Wagner ("Mr. Wagner") and The Motiva Group, Inc. ("TMGI") to the motion (the "Motion," as found at DE #144) of VRC for entry of an order to show cause why Mitchell S. Wagner ("Mr. Wagner"), counsel of record for The Motiva Group, Inc. ("TMGI") herein, should not (i) be held in contempt of court; and (ii) have his admission to practice *pro hac vice* revoked, and in support thereof states as follows:

### I. Introduction

The Motion suggests Mr. Wagner altered the language of an e-mail when presenting its text to this Honorable Court, and such may rise to a level of contempt. In his Opposition, Mr.

1

Wagner has once again altered the language of an e-mail and relied on such as a reason he ought not be held in contempt.

To be sure, the Opposition insists the real e-mail, actually sent by Mr. Wagner to counsel for the debtor and undersigned counsel, proclaims "I am the one who filled out and signed the Proof of Claim." Opposition, DE #149, at pp. 2, 5.[1] This is objectively false; no such sentence or phrase exists anywhere in the subject e-mail chain. *See* Actual E-mail, DE #144-1.

As extrapolated upon *infra*, this is not the only time Mr. Wagner has made an objective misrepresentation to this Honorable Court. And while the misstatement in the Opposition is less substantively concerning than other misrepresentations (of course Mr. Wagner signed the proof of claim – that is evident from the Claims Register – though it was not otherwise known he also prepared the document without the aid of his client), such highlights what is now a trend: Mr. Wagner and TMGI seem to have a fundamental problem abiding by their duty of candor to this Honorable Court. It is accordingly difficult to see how Mr. Wagner can remain in this case, just as it is difficult to see how Mr. Wagner's actions do not give rise to a finding of contempt.

**II.    The Multiple Objectively False Statements of Mr. Wagner**

One misstatement might be an error – or a strange, e-mail-centric, record keeping snafu. Multiple misstatements are suggestive of a bigger problem. And here, there are multiple objective misstatements in addition to the one highlighted in the Motion.

*First*, as noted *supra*, when responding to a contempt motion based on his having invented a quotation in an e-mail, Mr. Wagner once again invented a quotation in an e-mail. He insists the authentic e-mail chain included his proclamation, *inter alia*, "I am the one who filled out and

---

[1] For the avoidance of doubt, this fictitious quotation appears twice in the Opposition – once on page 2 and once on page 5.

2

signed the Proof of Claim." Opposition, DE #149, at pp. 2, 5. Those words never appear in the e-mail chain (or in any other e-mail ever sent to undersigned counsel by Mr. Wagner). *See* Actual E-mail, DE #144-1.

Is the underlying premise accurate? Mostly – Mr. Wagner is plainly the one who signed the proof of claim, though it was not before known, with any certainty, that he is the one who filled it out, or if he had any client assistance in so doing. But Mr. Wagner has elected to use quotation marks and thereby suggest he is furnishing an actual quote, showing he warned the debtor's counsel and undersigned counsel that Mr. Wagner is the appropriate witness for a hearing and that TMGI's corporate designee is not. Yet that is simply untrue – he never made such a written assertion, those words never appeared in his e-mail, and counsel was never given such a stark warning before electing to hire an interpreter at appreciable cost, before engaging the administrative task of endeavoring to locate an interpreter, and before expending notable time preparing for the examination.

*Second*, Mr. Wagner makes demonstrably false assertions about the actual testimony elicited at the at-issue hearing. In the Opposition, Mr. Wagner asserts, *inter alia*:

> Mr. Flores also answered that he merely signed the Agreement and that the representative who negotiated the agreement and supervised the account is no longer with Motiva. Mr. Flores further testified that the supervision of Motiva's phone agents was by defendants' agents— Longino and Norbert Rivera. Indeed, this was pursuant to the Teleservices Marketing Affiliate Agreement under which Global reserved the right to train and supervise the phone agents.

Opposition, DE #149, at pp. 6-7.

This assertion of Mr. Wagner is objectively untrue. To the contrary, TMGI's witness at the subject hearing testified topically as follows:

> **Q.** Was there a company representative who brought that client in to Motiva?
> **A.** Yes.
> **Q.** Who was that?
> **A.** Marco Oropeza.

3

> **Q.** And who negotiated the agreement with Global?
> **A.** Marco Oropeza.
> **THE COURT:** How do you spell Oropeza?
> **THE INTERPRETER:** Should I ask him or should I just tell you, because I know?
> **THE COURT:** Is it O-R-E-P-E-S-A?
> **THE INTERPRETER:** O-R-O-P-E-Z-A.
> **THE COURT:** O-R-O-P-E-Z-A, thank you.
> **BY MR. WAGNER:**
> **Q.** Who at Motiva was the one who had the interactions with representatives from Global?
> **A.** Marco Oropeza.
> **Q.** To your knowledge, did anybody from Global ever visit or come to Motiva's call center?
> **A.** Yes.
> **Q.** Who were those individuals?
> **A.** The names escape me, but it was Longino (phonetic), a person by the last name of Longino.
> **Q.** Anybody else that you can recall?
> **A.** I know there was another individual who frequently went to see the operations, but I don't recall his name.
> **Q.** Do you remember the name Norberto Regar (phonetic)?
> **THE INTERPRETER:** Bacarro?
> **MR. WAGNER:** Regar.
> **THE INTERPRETER:** Rellano.
> **THE WITNESS:** Yes, Norberto Rivera (phonetic) was the name of the second person.

Transcript at 55:20-57:2.[2]

Plainly, the witness never testified that "the supervision of Motiva's phone agents was by defendants' agents— Longino and Norbert Rivera." Nor did the witness testify that "the representative who negotiated the agreement and supervised the account is no longer with Motiva." To the contrary, reviewing a transcript of the hearing, one would never know that Mr. Orepesa is no longer with TMGI. And, likewise, simply reviewing the testimony of TMGI's corporate designee, one would have no clue that agents of the debtor allegedly supervised the work of TMGI's phone agents.

---

[2] It is reasonably anticipated the transcript will be docketed shortly; there is not presently a docket entry available for reference.

4

It is not clear why Mr. Wagner would choose to embellish testimony about people visiting the call center into testimony about those people furnishing "the supervision of Motiva's phone agents." Nor is it clear why Mr. Wagner would choose to assert his own witness testified about someone having left the employment of TMGI when, in fact, no such testimony was elicited. But it is clear neither of these assertions are truthful vis a vis the actual testimony furnished, and the Opposition is not so much an honest portrait of the witness' assertions as much as the Opposition is seemingly a portrait of what Mr. Wagner wishes the witness would have said or believes the witness should have said.

***Third***, Mr. Wagner was untruthful with this Honorable Court during the hearing in which the corporate designee testified. When the witness proved to lack topical knowledge, Mr. Wagner explained:

> Moreover, this was not the purpose for which we agreed to produce him. The stipulation concerned producing him concerning Motiva's proof of claim. And even as to that, I pointed out to Mr. VerStandig that I signed the proof of claim as the representative most familiar with the claim as supported by the documents. This is just an Alice in Wonderland expedition that is contrary to the rules of evidence and violates the attorney-client privilege.

Transcript at 45:3-11. Later, Mr. Wagner would further argue:

> First of all, the notion that Motiva did not produce the right person is absolutely incorrect. The scope of the examination far exceeds what counsel and I discussed. This is set forth in my declaration in support of the stay relief motion which has the verbatim e-mail exchange. And counsel wanted the person most knowledgeable from Motiva concerning the proof of claim, not concerning the stay relief motion. It's two different issues.

Transcript at 62:20-63:2.

As noted above, the suggestion Mr. Wagner "pointed out" that he signed the proof of claim is false. But more pointedly, the assertions that "the stipulation concerned producing him concerning Motiva's proof of claim" and "counsel wanted the person most knowledgeable from Motiva concerning the proof of claim, not concerning the stay relief motion" are equally false.

5

In the genuine e-mail exchange, undersigned counsel asked Mr. Wagner to produce TMGI's person most knowledgeable "about (i) the claims asserted against Mr. Rainaldi, Venture Resources Consulting, LLC, and the Rainaldi Family Trust in the state court in San Diego; (ii) The Motiva Group Inc.'s proof of claim in this bankruptcy; and (iii) any agreements between The Motiva Group Inc. and Michael Essary." Actual E-mail, DE #144-1.

Mr. Wagner, when arguing at the last hearing, chose to pretend the request was limited to sub-item (ii) – TMGI's proof of claim. And in so doing, he propagated the falsity that VRC never asked for a witness knowledgeable about "the claims asserted against Mr. Rainaldi, Venture Resources Consulting, LLC, and the Rainaldi Family Trust in the state court in San Diego." In fact, he even suggested VRC's counsel was going outside the scope of the indicated examination, to the point of calling the line of inquiry an "Alice in Wonderland expedition." These were, quite plainly, not honest positions for Mr. Wagner to assume.

*Fourth*, in a separate brief filed the day after the Opposition, Mr. Wagner and TMGI assert "Removing all doubt, Rainaldi, who provided the funds for NSBA DC's bankruptcy attorney's fees, acknowledges that Motiva's Judgment (and, hence, the fraudulent transfer action) is 'the driving impetus for this bankruptcy.'" Opposition to Motion to Approve Compromise and Sale, Subject to Higher and Better Offers, DE #150, at p. 8.

Never has John Rainaldi ("Mr. Rainaldi") said TMGI's fraudulent transfer allegations are the impetus for this bankruptcy. VRC simply observed in a brief that the money judgment against the debtor led to the filing of a bankruptcy petition. A review of the citation furnished by TMGI – DE #130 at p. 12 – confirms as much. The actual language used by counsel for VRC and Mr. Rainaldi was:

> The never-say-die approach of TMGI to collecting a $68,010.80 contract debt is both impressive in nature and the driving impetus for this bankruptcy. Somehow,

> TMGI turned that sum into an amount just under $500,000 even though its chief adversary was legally precluded from appearing in court, and even though a claim for *quantum meruit* does not give rise to punitive damages under California law. Perhaps, had TMGI simply endeavored to collect the $68,010.80 it appears to have actually been owed, we would not be here. But, alas, the numbers swelled, the noose tightened, a receiver was appointed, and the Debtor – like so many others – turned to this venue as a court of last resort.

Opposition to Motiva's Motion to Confirm Inapplicability of Automatic Stay; or Alternatively for Relief from Automatic Stay, DE #130, p. 12 (footnote omitted).

It is unclear how or why TMGI and Mr. Wagner would extrapolate from that verbiage some admission on the part of VRC that a fraudulent conveyance action against VRC led to this bankruptcy. And yet Mr. Wagner, on behalf of TMGI, asserts it as fact in a brief.

*Fifth*, Mr. Wagner now argues, also in the same separate brief, "The Trustee and Rainaldi/VRC argue that the San Diego Court's determination is unclear. But Rainaldi/VRC (and Holleran) contended that the two companies are not alter egos and prevailed on the issue. Consequently, they are judicially estopped, as well as collaterally estopped and substantively barred, from now taking the opposite position." Opposition to Motion to Approve Compromise and Sale, Subject to Higher and Better Offers, DE #150, at p. 6. This is likewise untrue.

For the avoidance of doubt, Mr. Rainaldi and VRC did not argue to the state court that the debtor and NSBA SD are not alter egos, nor could they have made such an argument. Neither Mr. Rainaldi nor VRC are parties to the 2016 litigation in which the alter ego issue was litigated. VRC attempted to intervene in that case, and its motion to intervene was denied. *See* Minute Order of July 13, 2020, attached hereto as Exhibit A, at p. 3. Because VRC was denied leave to intervene, the state court found, in connection with VRC's effort to vacate an order appointing a receiver, *inter alia*, "Given the concurrent ruling denying the Motion for leave to intervene, Venture Resources is not a party and thus lacks standing to bring this Motion." *Id.*

7

Stated otherwise, not only did VRC not take a position one way or another on the alter ego issue, but VRC was not even a party to the proceeding, was not permitted to participate in the proceeding, and most certainly cannot be deemed to have "prevailed" in the proceeding. (The same being true of Mr. Rainaldi.)[3] Yet Mr. Wagner, on behalf of TMGI, now asserts – in the posture of a hardened fact – that "Rainaldi/VRC (and Holleran) contended that the two companies are not alter egos and prevailed on the issue." This is simply untrue.

These are concerning untruths. They form a pattern when considered together. And they show a certain casual approach to the obligation of candor to the tribunal when considered both individually and cumulatively.

### III.    The Fictitious Quotes are Material

Mr. Wagner argues, in the Opposition, that VRC should have known the corporate designee produced at a hearing in this case would be without topical knowledge: "Mr. Wagner's email did not induce Rainaldi and VRC to pursue the examination of a witness they did not know was unknowledgeable." Opposition, DE #149, at p. 2. In support of this position, Mr. Wagner relies on having sent an e-mail reading, *inter alia*, "I am the one who filled out and signed the Proof of Claim" (*id.*) which, as noted *supra*, is not an accurate quotation from his e-mail.

There is a bigger problem, though: Mr. Wagner's actual e-mail – not the one he feigns to have sent, and not the one he referred to at the hearing, but, rather, the one he actually sent – does not put VRC on notice that a corporate designee will be totally without knowledge. VRC specifically asked for the person most knowledgeable about "the claims asserted against Mr.

---

[3] For the avoidance of doubt, VRC did subsequently file a brief in opposition to the consolidation of the at-issue case with a 2020 case to which VRC is a party. VRC did not make any substantive alter ego arguments in that brief, aside from noting procedural anomalies associated with revisiting the issue in the prism of the 2016 litigation. *See* Rainaldi Parties' Opposition to The Motivagroup, Inc.'s Motion to Consolidate and to Extend Receivership to NSBA DC, attached hereto as Exhibit B.

Rainaldi, Venture Resources Consulting, LLC, and the Rainaldi Family Trust in the state court in San Diego; (ii) The Motiva Group Inc.'s proof of claim in this bankruptcy; and (iii) any agreements between The Motiva Group Inc. and Michael Essary." Actual E-mail, DE #144-1.

The actual e-mail of Mr. Wagner does not indicate it was Mr. Wagner who filled out the proof of claim (seemingly without client input). Nor does it indicate a designee will be produced who has no knowledge of the pending litigation or the parties thereto. Rather, it indicates some portions of information are derivative of "attorney legal analysis" and outright offers to produce a "PMK." The logical reading of this is that the corporate designee will not be able to testify as to certain legal theories (which is not unusual for a lay witness), but will be factually knowledgeable. And yet that person "most knowledgeable" went on to indicate, *inter alia*, that he has never so much as heard of the debtor, and that he is not even aware of there being pending state court litigation:

> **Q.** Sir, do you believe Venture Resources Consulting has monetarily damaged the Motiva Group in the past five years?
> …[4]
> **THE WITNESS:** I really don't know how -- well, I really wouldn't have an answer to that.
> …
> **Q.** Do you know any corporation called National Small Business Alliance?
> **A.** No.
> **Q.** Are you aware, do you know about any lawsuits by the Motiva Group against National Small Business Alliance?
> **A.** No, I'm not aware.

Transcript at 43:14-16, 44:9-10; 52:8-13.

The actual e-mail does not put VRC, the debtor, or anyone else on notice of the fact that despite TMGI offering to produce the person most knowledgeable about the pending litigation against VRC (which includes a lawsuit to which the debtor is a party), the witness would not

---

[4] This ellipsis skips over an objection of Mr. Wagner that was overruled, together with brief colloquy associated therewith.

actually know anything about that case – including the identity of the debtor. Mr. Wagner's alternative e-mail quotations, coupled with his verbal comments in court, however, make it appear this was a proper expectation for VRC to have had going into the hearing.

This matters because it shows the materiality of the falsities at issue *sub judice*. Mr. Wagner did not err in copying and pasting a grammatical mark, nor did he accidentally refer to the "Untied States of America" or a "statue" in the United States Code. He produced an e-mail that made it clear his client's corporate designee would be without topical knowledge, when his actual e-mail made it appear the designee would have factual knowledge that does not necessarily touch on legal theories. He then misrepresented the scope of the stipulation when this issue became manifest at a hearing. He then repeatedly referred to the false e-mail at the hearing. He then relied on another fictitious e-mail quotation when endeavoring to explain why he previously relied on a fictitious e-mail quotation.

VRC thought it was going to have an opportunity to examine a designee of TMGI knowledgeable about state court litigation.[5] VRC expended time and resources preparing for this. And VRC then quickly discovered that the witness actually produced was no more knowledgeable about such matters than any random stranger on the street (at least until Mr. Wagner cross-examined the witness, at which time the witness' knowledge seemed to oddly expand). This would be bad enough in any context; that Mr. Wagner now insists VRC should have known better – and relies on a fictitious quote in so insisting – only compounds the absurdity.[6]

---

[5] It bears notation that TMGI had a legal obligation to prepare its corporate designee for his testimony, based on the topics furnished by counsel for VRC. *See, e.g.*, *In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 456 (Bankr. S.D.N.Y. 2007) ("A corporation has the 'responsibility to produce a [Rule 30(b)(6)] witness who can provide information within the corporation's knowledge or reasonably available to it' even if the relevant 'documents are voluminous and various people hold the information.'") (quoting *Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 43 (D. Conn. 2004)); *Sunterra Corp. v. Perini Bldg. Co., Inc.*, 2009 WL 453054, at *3 (E.D. Cal. 2009) ("To the contrary, each Plaintiff has an affirmative duty to designate an individual and then to prepare that individual to testify on its behalf."); *Hunter v. GEICO Gen. Ins. Co.*, 2018 WL 4352823, at *12 (E.D. La. 2018) ("This testimony establishes that the individual designated as most knowledgeable about the topics in the deposition notice, including Hunter's claim and the claim file, did not review the claims file in preparation for the deposition and knew nothing about the claim that the adjuster had not told her in the single conference call conducted to prepare her to testify. No amount of argument will convince the Court that this was a properly prepared corporate designee."); *S. Cal. Stroke Rehab. Associates, Inc.v. Nautilus*, 2010 WL 2998839, at *1 (S.D. Cal. 2010) ("The corporate party then has an affirmative duty to educate and prepare the designated representative for the deposition.") (citing *Sprint Commc'n Co. L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006)). It cannot reasonably be posited VRC honored this obligation.

[6] TMGI argues, *inter alia*, "VRC may not use that fact that the evidence is within Mr. Wagner's knowledge, rather than Motiva's knowledge, as a subterfuge to circumvent that attorney-client privilege through threat of contempt—especially when Mr. Wagner was clear from the onset and has offered to be questioned." Opposition, DE #149, at p. 7. VRC genuinely has no idea what Mr. Wagner is suggesting here; Mr. Wagner's deposition has not yet been taken in this case and no one has suggested there is a waiver of the attorney/client privilege. That Mr. Wagner seems to hold a view of the privilege more expansive than case law actually affords is an issue that can be dealt with separately, once objections premised upon privilege are actually interposed at a deposition. But if the suggestion is the Motion is an effort to procure a waiver of the attorney/client privilege, such is a disturbing suggestion Mr. Wagner seems to miss the whole point of the Motion.

### IV. Argument: Mr. Wagner Should be Held in Contempt and Have his Admission *Pro Hac Vice* Revoked

Mr. Wagner presented a falsified version of an e-mail exchange to this Honorable Court and declared it to be true and accurate. He then, repeatedly, made reference to that e-mail exchange during a hearing, imploring this Honorable Court to review it. And when it was noted the e-mail exchange is not, in fact, accurate, Mr. Wagner responded by filing his Opposition which, once again, fabricates part of an e-mail exchange. The following day he filed another brief in which he made demonstrably counterfactual assertions of fact. And yet he argues he ought to be permitted to continue in this case.

These misrepresentations constitute a violation of Rule 3.3 of the Rules of Professional Conduct. *See, e.g*. DC R RPC Rule 3.3(a) ("A lawyer shall not knowingly: (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer, unless correction would require disclosure of information that is prohibited by Rule 1.6…").

A violation of the Rules of Professional Conduct is, too, a violation of the rules of this Honorable Court, independently actionable and punishable as such. *See, e.g.*, Local Rule 2090-1(b) (incorporating District Court Local Rule 83.15); District Court Local Rule 83.15(a) ("Violations of the Rules of Professional Conduct (as adopted by the District of Columbia Court of Appeals except as otherwise provided by specific Rule of this Court) by attorneys subject to these Rules shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship").

To be sure, these are objective falsities propagated by Mr. Wagner. These are not instances of puffery or creative argument, nor are these occasions where a lawyer has simply failed to mention some collection of facts detrimental to her or his client's cause. These are statements made

12

by Mr. Wagner that, in the plainest form of a black and white reading, are demonstrably untrue. He did *not* send an e-mail with the "person with no knowledge" quip in it. He did *not* send an e-mail reading "I am the one who filled out and signed the Proof of Claim." TMGI's witness did *not* testify that Mr. Orepesa has left the company. TMGI's witness did *not* testify that the debtor's two agents supervised TMGI's work. The agreement concerning TMGI's production of a witness was *not* limited to someone knowledgeable about TMGI's proof of claim. And Mr. Rainaldi and VRC did *not* succeed in arguing NSBA SD is not the debtor's alter ego.

The concern raised by these falsities is palpable. This bankruptcy exists because Mr. Wagner somehow turned a debt of just under $69,000.00 into a judgment for just under $500,000.00, and he did it by proceeding in a court where the debtor was not so much as permitted to be represented by counsel. When VRC tried to intervene in the case, its effort was denied and its counsel was prohibited from participating except to the extent of a motion seeking consolidation with another case. So it would seem the California proceedings were largely *ex parte*, were largely based on proposed orders drafted by Mr. Wagner, and were largely (albeit not entirely) tied to Mr. Wagner's ethos as an attorney.

Now knowing that Mr. Wagner – for whatever reason, and whether intentionally or unintentionally – has a pattern of violating his duty of candor to the tribunal, one necessarily is led to wonder what other falsities, half-truths, convenient omissions, and oddities may exist. And one cannot help by to surmise the debtor herein may very well have a claim against Mr. Wagner and TMGI if any such falsities or half-truths proved instrumental to the creation of a judgment that invited this bankruptcy and all the expenses attendant hereto.

For the time being, though, it is clear Mr. Wagner has been dishonest in his dealings with this Honorable Court – both in his remarks at a hearing and in at least three separate briefs he has

13

signed and filed. This is not an isolated incident; this is a pattern and practice. And that more than amply gives rise to the proper foundation for issuance of a show cause order.

### V.    Conclusion

WHEREFORE, VRC respectfully prays this Honorable Court (i) direct Mr. Wagner to show cause why he should not be held in contempt and why his admission *pro hac vice* should not be revoked; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 12, 2021

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Venture Resources Consulting*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of July, 2021, a copy of the foregoing was served electronically upon filing via the ECF system, as well as via US Mail, postage prepaid, to:

Mitchell S. Wagner, Esq.
3771 Boone Court
San Diego, CA 92117

/s/ Maurice B. VerStandig
Maurice B. VerStandig