**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE: ) | 21-00031-ELG |
| NATIONAL SMALL BUSINESS ) |  |
| ALLIANCE, INC.., ) | CHAPTER 7 |
| ) |  |
| Debtor. ) |  |

**MOTION OF CHAPTER 7 TRUSTEE**
**TO SELL SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUME AND ASSIGN ASSERTEDLY EXECUTORY CONTRACTS, AND REQUEST TO EXTEND TIME TO ASSUME EXECUTORY CONTRACTS**

COMES NOW Wendell W. Webster, Chapter 7 Trustee ("Trustee") of the bankruptcy estate of National Small Business Alliance, Inc. ("Debtor"), by and through counsel McNamee Hosea, P.A., and as his *Motion to Sell Substantially Assets Free and Clear of Liens of the Debtor and Assume and Assign Asserted Executory Contracts, And Request to Extend Time to Assume Executory Contracts* (the "Motion"), respectfully submits the following:

1. This case commenced on January 31, 2021, when the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Court. The case converted to Chapter 7 on August 18, 2023. Wendell W. Webster is the Trustee of the Debtor's Chapter 7 estate.

2. The Debtor's history is well known to this Court.[1] The Trustee has cut and pasted the section of the Debtor's history from the Court-approved disclosure statement [Docket No.

---

[1] NSBA is a corporation formed pursuant to the laws of the District of Columbia on January 22, 2002. The Debtor operates a nationwide online network through which various small businesses are furnished preferred rates on a curated series of support services, while the Debtor also provides bespoke counseling to the various

_____
Justin P. Fasano (DC Bar MD21201)
McNamee Hosea
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jfasano@mhlawyers.com
*Counsel to the Trustee*

358, pages. 2-3] into the footnote below. On February 3, 2021, the United States Trustee appointed Marc. E. Albert ("Trustee") as Subchapter V trustee under § 1183(a) of the Bankruptcy Code. On April 18, 2022, the Bankruptcy Court entered its Order Revoking the Debtor's Subchapter V and Small Business Designation [ECF Dkt. No. 284] (the "Revocation Order"). Following the Revocation Order, the case began proceeding as a standard Chapter 11 case with Marc Albert as Chapter 11 trustee. The Debtor confirmed a Chapter 11 plan, pursuant to which Mr. Albert operated the Debtor. The day-to-day operations were managed by Raymond Longino.

---

entrepreneurs comprising its membership. NSBA provides services to thousands of small businesses nationwide, and its active members pay dues on an annual or semi-annual basis, and thusly performs a vital vetting function in aiding members of the small business community in search of reputable support services ranging from payroll administration to digital advertising. and it has A+ rating with The Better Business Bureau (BBB), representing BBB's degree of confidence that the business is operating in a trustworthy manner. The Debtor has historically been reliant on various third-party telemarketing partners to help spread information about NSBA's services and attract a greater membership base. Equally, the Debtor also uses a third-party service to process its membership dues; over its nearly 20-year existence, the Debtor has looked to various banking partners to facilitate its depository operations. Similarly, since 2008, NSBA has worked with Venture Resources Consulting, LLC ("VRC") and John Rainaldi to obtain critical funding services through the provision of several debt facilities. While the Debtor has previously had liquidity issues at various points in its existence, it has generally been sufficiently profitable in nature so as to provide for the payment of overhead expenses, to stay current on debt service payments, and to pay its principals. When the Debtor had certain issues managing its accounts payable and cash flow, it did engage the advisory services of VRC for a brief period of time. Throughout its history, the Debtor has had two meaningful interactions with the judicial system prior to this bankruptcy case. On one occasion, VRC and Mr. Rainaldi brought suit against NSBA for various loan obligations that were then in default; this litigation was amicably resolved through a settlement agreement. On another occasion, The Motiva Group, Inc. ("Motiva") brought suit against the Debtor and certain related entities for, inter alia, the nonpayment of monies due and owing on account of services rendered. This litigation led to the imposition of a default judgment, the post-judgment imposition of punitive damages, and the appointment of a receiver. As with many other small businesses, the COVID-19 pandemic created significant challenges for the Debtor. The loss of revenues caused by the pandemic combined with the actual and threatened cost of multiple litigation by Motiva forced the Debtor to commence this bankruptcy case under Chapter 11 (Subchapter V) of the Bankruptcy Code on January 31, 2021, in order to address all of the claims of its disparate creditors in one uniform proceeding and to reorganize in this Honorable Court. On July 29, 2021, the Court entered a Judgment (the "Alter Ego Judgment") in Adversary Proceeding No. 21-10017 (the "Alter Ego Adversary") declaring that two entities related to the Debtor and associated with the previous litigation brought by Motiva, National Small Business Alliance, a California corporation ("NSBA SD"), and Global Impact Group, Inc., a District of Columbia corporation ("Global," and together with NSBA SD, the "Alter Ego Entities"), were alter ego entities of the Debtor. As a consequence, all assets and liabilities of the Alter Ego entities are considered assets and liabilities of the Debtor and are part of the Debtor's bankruptcy estate Proceeds to be generated from the continuing operation of the Debtor's business under possession by the Trustee, including increased revenue projected to be derived from a postpetition financing arrangement the Debtor has secured with its primary secured creditor allowing for the Debtor to engage call center employees to drive increased membership sales, will form the basis for the funding of the Plan.

3. The Debtor does not possess significant tangible assets or other property. The Debtor maintains a membership list with membership fees charged on an annual or semi-annual basis. However, because such memberships are inextricably tied to the membership services provided by the Debtor, such membership list maintains no value unless tied to the services provided by the Debtor. Thus the primary asset of the Debtor is its revenues as a continuing operating business, through the monthly revenues generated as a going concern. The Debtor's membership interests currently generate approximately $24,000 per month, against bare-bones expenses of approximately $12,000.

4. The Debtor's assets are assertedly encumbered by a lien in favor of Venture Resources Consulting, LLC, a California limited liability company, John Rainaldi, and The Rainaldi Family Trust (collectively, "VRC") as reflected in Proof of Claim 3-1 originally filed on the Claims Register on April 9, 2021 in the amount of $201,770.72. This amount does not include interest. It is believed that VRC's lien exceeds the value of the Debtor's assets. The deadline for pursuit of chapter 5 actions has expired (except for transfers avoidable pursuant to 11 U.S.C. § 549). The estate is currently holding $47,135.72 in cash in various accounts.

## RELIEF REQUESTED

5. In this Motion, the Trustee seeks authority to sell the Property to Ray Longino or his assigns (the "Purchaser") free and clear of liens except the lien of VRC.

6. The Purchaser and the Trustee have entered into a contract (the "Contract"), attached hereto as **Exhibit A**[2], calling for the purchase of the Property for $25,000.00 (the "Purchase Price"). The Purchaser has provided or will provide a $10,000.00 deposit to be held in

---

[2] Due to costs, exhibits are not being mailed with this motion, but are available upon e-mail request to undersigned counsel. Mailing exhibits to all parties in interest would cost thousands of dollars. The Trustee has requested authority pursuant to Fed. R. Bankr. Proc. 6006(e)(3) to mail only the Motion and proposed order expediting hearing on the Motion to creditors.

escrow. The Purchaser will pay the balance due on the Contract at closing. The Contract is contingent on approval by this Court.

7. The Trustee submits that although no formal appraisal has been undertaken, the price offered by the Purchasers are fair and reasonable. The assets are fully encumbered and require significant effort to collect. The Trustee believes there is no natural market for the assets, and no effective way to hire specialized professionals in this type of asset, given the assets in the estate. Accordingly, the only effective way to sell the assets is to sell to someone familiar with them that VRC approves. It is believed that VRC will consent to the sale and waive any lien as to the assets of the estate other than the assets being sold, including any income received through the date of closing.

8. The Trustee can sell free and clear of IRS tax liens set forth in proof of claim 10-1. All but two tax liens were improperly recorded in California. The two tax liens recorded in the District of Columbia were recorded more than ten years ago, and have neither been renewed or extended. Further, they include penalty payments that can be subordinated pursuant to 11 U.S.C. § 724(a). Further, the Trustee can subordinate any tax lien pursuant to 11 U.S.C. 724(b) to payment of administrative expenses, including pre-conversion commissions.

9. The Trustee also requests that pursuant to § 365(a) to assume the Debtor's executory contracts to provide customer/ membership services to all parties listed on Exhibit B. *See* **Exhibit B** (the "Contracts"). The Trustee further requests that the Contracts be assigned to the Purchaser after closing.

10. Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C.

4

§ 365(a). Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing in relevant part that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

11. The standard that is applied in determining whether an executory contract or unexpired lease should be assumed is the debtor's "business judgment" that the assumption is in its economic best interests. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113); *In re III Enters., Inc. V*, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) (citations omitted), aff'd, 169 B.R. 551 (E.D. Pa. 1994). It is well established that courts should approve a debtor's motion to assume or reject an executory contract if the debtor's decision is based on its business judgment. *See Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.)*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule.")

12. In this case, the contracts which the Debtor wish to assume are those which the Purchaser wishes to purchase. As the contracts will be assigned, the Debtor will no longer incur

5

liability. 11 U.S.C.§ 365(k). The assumption and assignment of these contracts increases the value of the sale of the assets and reduces the potential liabilities of the estate and is thus is a valid exercise of business judgment.

13. A trustee may assign an executory contract or unexpired lease of the debtor if it assumes the agreement in accordance with section 365(a), and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the agreement. 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *EBG Midtown S. Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide Corp.),* 139 B.R. 585, 592 (S.D.N.Y. 1992); *In re Rachels Indus., Inc.*, 109 B.R. 797, 803 (Bankr. W.D. Tenn. 1990); *see also Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) ("[a]though no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Adequate assurance of future performance may be provided by demonstrating, among other things, the assignee's financial health. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when the prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding). In this case, the Purchaser will receive support from VRC so that it can properly service the contracts. Further, the Purchaser has been able to operate the Debtor at a profit once the costs of bankruptcy administration were no longer draining the Debtor's assets. In any event, the Purchaser will be able to provide better services than a Chapter 7 trustee, and it is imperative that the sale to the Purchaser be approved so that he can do so.

B.     **Request for extension.**

14.    Because this case is now in Chapter 7, there is a requirement to assume or reject executory contracts 60 days from conversion.  11 U.S.C.§ 365(b)(1).  The current deadline to assume or reject executory contracts is October 17, 2023.  Extensions may granted for cause but any extension must be granted before the deadline expires.

15.    The assumption and assignment of executory contracts is essential to any sale. However, it is somewhat likely the Trustee will need past October 17, 2023 to sell the assets. The Trustee is operating the Debtor's business, and is unaware of any likely default on any executory contract.  Accordingly, the Trustee asserts cause exists for an extension and respectfully requests an extension to and including December 18, 2023 to assume or reject executory contracts.

**WHEREFORE**, based on the foregoing, the Trustee respectfully requests this Honorable Court enter an order  (a) Granting the Trustee the authority to sell the Debtor's assets to the Purchaser; (b) Approving the Contract as set out herein; (c) Authorizing the Trustee to assume the Contracts and to assign the Contracts to the Purchaser; (d) Providing that the estate has no further liability under the Contracts pursuant to 11 U.S.C. § 365(k); and  (e) Granting such other and further relief as this Court may deem just, equitable and proper.

Dated: September 19, 2023           Respectfully submitted

/s/ *Justin P. Fasano*
Justin P. Fasano (Fed Bar No. MD21201)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
Tel: 301-441-2420
Fax: 301-982-9450
jfasano@mhlawyers.com
*Counsel for the Trustee*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 19, 2023, I served a copy of the foregoing via CM/ECF upon all parties receiving notice thereby.

      /s/ Justin P. Fasano
      Justin P. Fasano