## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement") is made this 19th day of September, 2023, by and among WENDELL W. WEBSTER (hereinafter referred to as "Seller"), chapter 7 trustee for NATIONAL SMALL BUSINESS ALLIANCE, INC. a District of Columbia corporation (hereinafter referred to as "Debtor"), and RAYMOND LONGINO, (hereinafter referred to as "Buyer"):

### RECITALS:

A. Seller desires to sell to Buyer substantially all (but not all) of the Debtor's Assets pursuant to the terms stated herein; and

B. Seller desires to sell and assign to Buyer the Debtor's Executory Contracts listed on Schedule 2 (the "Contracts") pursuant to the terms stated herein; and

C. Buyer wishes to purchase the Assets and Contracts from Seller in accordance with these terms.

### AGREEMENTS:

Now THEREFORE, in consideration of the foregoing recitals, which are considered substantive and are incorporated hereby into this Agreement, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties warrant, covenant and agree as follows:

### Section One
### Sale and Purchase of Assets

A. *Sale and Purchase of Assets.*  Seller agrees to sell, convey, transfer, assign and deliver to Buyer all of the Debtor's assets, listed on Schedule 1 (the "Assets"), and shall execute with Buyer a Bill of Sale in substantially the form set forth in Exhibit A ("Bill of Sale"). The Bill of Sale shall contain a detailed listing of the Assets. Buyer acknowledges that the Assets do not comprise all of the assets owned by the Seller on date hereof, and that not all assets of the Seller on the Closing Date will be sold to Buyer hereunder.

B. *Bankruptcy Court Approval.* This Agreement shall be effective only upon the entry of an order of the Bankruptcy Court approving the terms and conditions of the Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Order"). In the event that the Bankruptcy Court denies approval of this Agreement, then the Agreement shall be null and void, and Seller shall return the any payments made by the Buyer to the Buyer. Nothing contained herein shall require any Party to appeal disapproval of this Agreement.

C. *Excluded Assets.* All assets of Seller not set forth in Exhibit A are excluded from the transaction described herein and are not sold, transferred or delivered to Buyer hereunder (the "Excluded Assets"). For avoidance of doubt and without limitation, the parties agree that the following assets of the Seller are Excluded Assets, it being understood for purposes of this Paragraph C, only that the word "Seller" shall also mean any other person or entity to the extent such person or entity is acting for or in relation to the Business:

  1. *Bank Accounts.* All cash on deposit in all bank accounts in Seller's or Debtor's name in connection with the Business as of the Closing Date under this Agreement.

  2. *Deposits.* All right, title and interest in and to any: (a) security deposits existing in the name of the Seller as of the Closing Date; (b) lease deposits existing in the name of the Seller as of the Closing Date; (c) utility deposits existing in the name of the Seller as of the Closing Date.

  3. *Chapter 5 Causes of Action:* All causes of action of the Debtor's estate arising under Chapter 5 of the United States Bankruptcy Code.

  4. *Liabilities.* Buyer shall not be deemed to assume any liabilities of Seller at Closing, other than those expressly assumed.

### Section Two
### Purchase Price and Payment

Exhibit A

A. *Purchase Price.* The purchase price of the Assets shall be Twenty Five Thousand and NO/100 Dollars ($25,000.00), (the "Purchase Price"). The Purchase Price shall be paid as follows:

   1. *Earnest Money.* No later than ten (10) days following the execution of this Agreement, Buyer shall make a deposit of earnest money in the amount of Ten Thousand Dollars ($10,000) (the "Earnest Money") with McNamee Hosea, P.A., which Earnest Money shall be held by McNamee Hosea, P.A., in its IOLTA account until Closing, at which time this sum shall be applied to the Purchase Price. If this Agreement shall terminate prior to an effectuation of the Closing, the Earnest Money shall be returned to the Buyer, provided, however, that if the Buyer shall breach this Agreement (including but not limited to refusing to consummate the transaction at Closing after each condition to Buyer's obligation to so consummate the transaction have been satisfied), the Buyer shall forfeit the Earnest Money and Seller shall have the right to retain the Earnest Money itself (although such remedy shall not foreclose any other remedy available to Seller under this Agreement or applicable law).

   2. *Balance of the Purchase Price.* The balance of the Purchase Price shall be paid by the Buyer to Seller either by wire at Seller's direction or in the form of bank certified funds at the Closing.

   3. *Release.* Upon approval of this Agreement by the Bankruptcy Court, Buyer forever releases and forever discharges (i) Seller, and (ii) the Debtor's estate, from each and every right, claim, debt, cause of action, demand, suit for damages, liability, legal fee, act or right of action of any nature whatsoever, whether asserted or unasserted, known or unknown, that Buyer made, could have made, or is able to make against Seller or the Debtor's estate, provided that the foregoing release will not apply to any obligation arising under this Agreement or to claims arising from or relating to the breach of this Agreement.

## Section Three
## The Closing

The closing of the transaction described herein (the "Closing") shall take place on or before 3:00 P.M. on October 21, 2023, at the law offices of McNamee Hosea, P.A., in Greenbelt, Maryland, or on such earlier date or at such other place (including virtually) as is mutually agreeable to Buyer and Seller (the actual Closing date being the "Closing Date"). At the Closing: (A) Seller shall convey the Assets to Buyer; and (B) Buyer shall pay to Seller the Purchase Price, either by wire at Seller's direction or in the form of bank certified funds.

## Section Four
## Seller's Representations and Warranties

Seller and Seller's Principal make the following representations and warranties to Buyer:

A. *Court Approval.* Seller will timely request court approval of this Agreement.

B. *Third Party Consents.* Any and all consents required from third parties have been or will be obtained by Seller and such consents shall be in full force and effect at Closing.

C. *Broker.* No consultant or broker was involved in this transaction.

## Section Five
## Buyer's Representations and Warranties

Buyer makes the following representations and warranties to Seller:

A. *Organization.* Any assignee of Buyer is, and will be at the time of Closing, a limited liability company or corporation duly organized and validly existing and in good standing under the laws of the jurisdiction, and has, and will have at the time of closing, the corporate power to own its property, and conduct its business.

B. *Third Party Consents.* Any and all consents required from third parties have been or will be obtained by Buyer and such consents shall be in full force and effect at Closing.

C. *Broker.* No consultant or broker was involved in this transaction.

## Section Six
## Buyer's Conditions of Closing

The Buyer's obligation to proceed to Closing under this Agreement is specifically conditional upon the occurrence or existence of the actions, events, or conditions, as applicable, set forth below:

A. *Closing Date.* The occurrence of Closing on or before October 21, 2023.

B. *Bill of Sale.* The valid execution by Seller of the Bill of Sale and Assignment and Assumption Agreement in a form substantially similar to that set forth in Exhibit A to this Agreement.

C. *Transfer of Assets.* The taking of all action by Seller, at or prior to the time of Closing, with respect to third parties, including consents and approvals for transfer when required, necessary to effect the transfer to Buyer of the Assets.

## Section Seven
## Seller's Conditions of Closing

The Seller's obligation to proceed to the Closing under this Agreement is specifically conditional upon the occurrence or existence of the actions, events, or conditions, as applicable, set forth below:

A. *Closing Date.* The occurrence of Closing on or before October 21, 2023.

B. *Buyer's Performance.* That Buyer has performed and complied with all of its agreements, terms and conditions under this Agreement on or before Closing.

C. *Representations and Warranties True and Correct.* The truth and correctness of the representations and warranties of Buyer as of the Closing Date.

D. *Bill of Sale.* The valid execution by Buyer of the Bill of Sale and Assignment and Assumption Agreement in a form substantially similar to that set forth in Exhibit A to this Agreement.

E. *Payment of Purchase Price.* The payment by Buyer to Seller the Purchase Price in wired funds or bank certified funds.

## Section Eight
## Termination of Agreement

This Agreement may be terminated or canceled, with the attendant release of all liabilities or obligations hereunder between the parties: (A) by mutual agreement of the parties at any time before the Closing Date; or (B) if it is not approved by the Bankruptcy Court prior to October 21, 2023.

## Section Nine
## Miscellaneous

A. *Notices.* Any notice, consent or waiver required or permitted to be given under this Agreement shall be in writing and shall be deemed given when delivered by hand or received by registered or certified mail, postage prepaid, or by nationally reorganized overnight courier service addressed, and by e-mail, to the party to receive such notice at the following address or any other address substituted therefor by notice pursuant to these provisions:

**Seller:**

>Wendell Webster
>
>c/o Justin P. Fasano
>
>McNamee Hosea, P.A.
>
>6404 Ivy Lane, Suite 820
>
>Greenbelt MD 20770

**Buyer:**

>Raymond Longino
>
>2726 Shelter Island Dr#428
>
>San Diego, CA 92106

B. *Further Assurances.* The parties agree, at any time and from time to time after the date of closing, to do, execute, acknowledge, deliver, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney, and assurances as may be required to complete the transactions

contemplated in this Agreement.

C. *Expenses.* Each party shall pay its own expenses and costs, including without limitation counsel fees and transfer taxes, incurred in connection with the consummation of this Agreement. None of the expenses of the Seller shall be paid out of the Assets to be conveyed hereunder.

D. *Attorney's Fees.* Should any litigation be commenced between the parties hereto, or should any party institute any proceeding in a bankruptcy or similar court which has jurisdiction over any other party hereto or any of his, hers, or its assets, concerning any provision of this Agreement or the rights and duties of any person in relation thereto, the party or parties prevailing in such litigation shall be entitled, in addition to such other relief as may be granted, to his, hers, or its or their reasonable attorney's fees and expenses and court costs in such litigation, which shall be determined by the court in such litigation or in a separate action brought for that purpose.

E. *Representation.* The law firm of McNamee Hosea, P.A. represents only Seller in this transaction. Buyer has had the opportunity to retain and consult with legal counsel of their choice. The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any person by virtue of the authorship of any provision of this Agreement.

F. *Agreement Binding.* This Agreement is binding upon and shall inure to the benefit of the parties' heirs, executors, trustees, successors, and assigns.

G. *Entire Agreement.* The exhibits hereto and the certificates and other documents to be furnished in connection herewith are an integral part of this Agreement. All understandings and agreements between the parties are merged into this Agreement which fully and completely expresses their agreements and supersedes any prior agreement or understanding relating to the subject matter, and no party has made any representations or warranties, express or implied, not herein expressly set forth.

H. *Exhibits and Schedules.* All Exhibits and Schedules attached hereto are incorporated in this agreement by this reference hereto.

I. *Venue:* Buyer and Seller submits to the jurisdiction of the United States Bankruptcy Court for the District of Columbia over any action to enforce or interpret this Agreement, and consents to the authority of such court to enter a final or judgment concerning such action. To the extent that the United States Bankruptcy Court for the District of Columbia determines it lacks jurisdiction over any action, Buyer and Seller each agree to the exclusive jurisdiction of the Superior Court of the District of Columbia.

J. *Jury Waiver.* EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION OR OTHER PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER, RELATING TO OR IN CONNECTION WITH THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY HERETO CERTIFIES THAT (I) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF ANY ACTION, SUIT OR PROCEEDING, SEEK TO ENFORCE THE FOREGOING WAIVER, (II) EACH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (III) EACH PARTY MAKES THIS WAIVER VOLUNTARILY AND (IV) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

K. *Headings and Captions.* The headings or captions in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provisions hereof.

L. *Severability.* In the event that any provision of this Agreement shall be held to be void, invalid, or unenforceable under or contrary to the law of any jurisdiction for any reason, it shall not in any way invalidate, affect, or impair the remainder of this Agreement, it being the intention of the parties that such void, invalid, or unenforceable provision shall be deemed modified or omitted to the extent necessary to achieve validity or enforceability, and the provision so modified shall be binding on and enforceable against both parties to the extent permitted by law and shall remain in full force and effect. Any provision of this Agreement that is held void, invalid or unenforceable in one jurisdiction shall nevertheless be binding and remain in full force and effect in any other jurisdiction in which such provision is valid, legal, and enforceable.

M. *Parties In Interest.* This Agreement shall be binding upon and inure solely to the benefit of the parties, and nothing in this Agreement, express or implied, is intended to confer upon any other person any rights or remedies of any nature whatsoever under or by reason of this Agreement

N. *Applicable Law.* All questions concerning the construction, validity, and interpretation of this Agreement will be governed by the laws of the District of Columbia (without giving effect to its conflict of laws provisions).

O. *Execution and Counterparts.* This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement. At the Closing, signature pages of counterparts may be exchanged by facsimile or by electronic transmittal of scanned images thereof, in each case subject to appropriate customary confirmations in respect thereof by the signatory for the party providing a facsimile or scanned image and that party's closing counsel.

P. *Non-Assignment.* Buyer may assign this Agreement only to a limited liability company under his sole control ("Allowed Assignee"). Such assignment shall not relieve Buyer of any obligations under this Agreement. Buyer may assign this Agreement to an Allowed Assignee only upon obtaining the agreement of said Allowed Assignee to be bound to Seller to perform each of Buyer's obligations under this Agreement.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties hereto, after free and full discussion of the terms contained herein and with the understanding of the meaning and intent of those terms and provisions, each has hereunto signed and acknowledged this Agreement under seal on the date written below:

**Raymond Longino**

By: [signature]
Date: 9/18/2023

**Wendell W. Webster, Chapter 7 Trustee**

By: Wendell W. West, Trustee [signature]
Date: 9/19/2023

Page One of Twelve Pages

*Draft of 9/12/2023*

SCHEDULE 1 TO ASSET PURCHASE AGREEMENT

The Assets are _____

All accounts receivable of the Debtor and the Debtor's estate.

All rights associated with the website

All assets of Global Impact Group, Inc conveyable by the Seller

All assets of National Small Business Alliance conveyable by the Seller

All Contracts on Schedule 2 and rights associated with such Contracts.

The Assets do not include the Excluded Assets.

## EXHIBIT A TO ASSET PURCHASE AGREEMENT

### Bill of Sale

This Bill of Sale (this "Bill of Sale") is made as of the ___ day of _____, 2023, by and among WENDELL W. WEBSTER (hereinafter referred to as "Seller"), chapter 7 trustee for NATIONAL SMALL BUSINESS ALLIANCE, INC. a District of COlumbia corporation (hereinafter referred to as "Debtor"), and RAYMOND LONGINO, (hereinafter referred to as "Buyer"):

### RECITALS:

A. Concurrently herewith, Seller is selling to Buyer the Assets, pursuant to the Asset Purchase Agreement dated as of the _____ day of September 2023 by and between Seller, Seller Principal, and Buyer (the "Asset Purchase Agreement").

B. Pursuant to the Asset Purchase Agreement, Seller has agreed to sell to Seller certain tangible assets, all as set forth with greater particularity in the Asset Purchase Agreement.

C. The parties desire to set forth their understandings in writing with respect to the sale of such tangible assets.

In consideration of the mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

### AGREEMENTS:

1. *Sale and Assignment.* Seller hereby sells, assigns, transfers, sets over, delivers and conveys unto Buyer, to and for the benefit of the Buyer and its successors and assigns, to have and to hold all to its own use forever, all of Seller's right, title and interest in, to and under, the Assets and Contracts and purchased pursuant to the Asset Purchase Agreement. The Assets include, but are not limited to, those assets listed on Schedule A hereto. Seller acknowledges and here affirms the representations and warranties made by Seller in the Asset Purchase Agreement with respect to the Assets.

2. *Further Actions.* The Seller agrees that, at any time and from time to time after the delivery hereof, he will, upon reasonable request of the Buyer, take all appropriate action and execute and deliver all appropriate documents, instruments and conveyances of any kind which may be desirable or necessary to carry out the provisions of this Bill of Sale.

4. *Defined Terms.* Capitalized terms used herein, and not defined herein, shall have the meanings given them in the Asset Purchase Agreement.

5. *Binding Agreement.* This Bill of Sale shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

6. *Asset Purchase Agreement Terms.* This Bill of Sale is subject to the Asset Purchase Agreement and is incorporated therein. For the avoidance of doubt, this Bill of Sale is subject to Section 10 (Miscellaneous) of the Asset Purchase Agreement and such terms are incorporated herein.

7. *Counterparts.* This Bill of Sale may be executed by the parties hereto in separate counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. A facsimile of an original signature is valid as an original signature.

IN WITNESS WHEREOF, the undersigned parties have executed this Bill of Sale under seal as of the date first written above.

**Raymond Longino**

By: [signature]

Date: 9/18/2023

**Wendell W. Webster, Chapter 7 Trustee**

By: Wendell W. Webster, Trustee

Date: 9/19/2023

**Schedule A to Bill of Sale**

[Detailed Asset Listing]